# "EXHIBIT A"



# CONFIDENTIALITY, NON-SOLICITATION
# AND NON-COMPETITION AGREEMENT

This Confidentiality, Non-Solicitation and Non-Competition Agreement ("Agreement") is made by and between CyberCoders, Inc. (hereinafter "Company," "CyberCoders" or "Employer") and __Charles Cooke_____ ("Employee").

WHEREAS, in connection with Employee's employment with the Company, Employee will receive valuable training and access to the Company's confidential and proprietary information and trade secrets, as well as confidential and proprietary information of ASGN Incorporated and its affiliates and subsidiaries; and

WHEREAS, in consideration of, and as a material inducement to the Company to employ or to continue to employ Employee, the parties hereto desire to enter into this Agreement.

NOW THEREFORE, in consideration of the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee and the Company agree as follows:

1. **Definitions and Non-Disclosure of Confidential Information**

    **1.1 Definitions**

    (a)     **"Company Business"** means the services provided by the Company, including but not limited to (a) the recruiting, staffing, assignment or placement of temporary, temporary-to-hire, and permanent/direct hire employees in technical, hardware/software, information technology, healthcare information technology, engineering and design, wireless telecommunications, telecommunications, digital, life sciences, health information management or other highly skilled positions in the business disciplines in which Company operates; and (b) such other businesses as the Company enters or makes preparation to enter during the course of Employee's employment.

    (b)     **"Competing Business"** means any person, business, or subdivision of a business which provides products or services that are the same as or substantially similar to, and competitive with, the Company Business or which is actively planning to engage in the Company Business.

    (c)     **"Competing Position"** means a position held by the Employee with a Competing Business that involves duties within the Restricted Territory that are the same as or substantially similar to the duties the Employee performed for the Company within the last twenty-four (24) months of Employee's employment with the Company.

    (d)     **"Confidential Information"** means any and all nonpublic information whether written or verbal, or contained on computer hardware or software, electronic mail, thumb drive, disk, or other media, relating to or arising from the Company's business, including, without limitation, (i) the



Company's business plans, strategic plans, reports, forecasts, budgets, sales, projections and costs; (ii) all information concerning the Company's employees, including but not limited to payroll records, employee lists, prospective employee lists, salaries, wage information, other compensation, agreements, commission schedule, benefits, skills, and abilities, unless Employee's own; (iii) all information concerning Company's temporary employees, candidates, consultants, and contractors, including lists, identities, resumes, CVs, preferences, transaction histories, rates and related information, and other characteristics; (iv) the details of Company's relationship with its customers, customer representatives, and prospective customers, including their identity, the identities of their employees, contractors and consultants, special needs, job orders, preferences, transaction histories, contacts information, other characteristics, agreements, prices, and the nature of their fees and charges; (v) marketing activities, plans, promotions, operations, research and development, advertising sources, the techniques used in, approaches to, or results of any market research, and other marketing data; (vi) business operations, internal structures and financial affairs; (vii) systems and procedures, and methods of production; (viii) pricing structure, pricing information (such as price lists, quotation guides, previous or outstanding quotations, or billing information); (ix) proposed or pending projects, services and products; (x) contracts with other parties; (xi) customer identification numbers,  (xii) solutions to Company customer's technical problems; (xiii) information concerning President's Club; (xiv) customer history and technical information; (xv) business plans and projections, including new product, facility or expansion plans; (xvi) computer techniques and processing capabilities, proprietary computer programs, and estimating programs and methodology; (xvii) training materials; (xviii) Trade Secrets; (xix) financial information and/or documents and nonpublic forms, contracts, policies, procedures and other printed, written or electronic material generated or used in connection with Company's business; (xx) any and all information marked "Confidential" or "Proprietary" or "Not for Distribution" or words similar thereto which are meant to restrict copying or distribution of same; and (xxi) any and all information that the Company is obligated to maintain as confidential or that the Company may receive or has received from others (including customers or potential customers) with any understanding, express or implied, that it will not be disclosed.  Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that a reasonable person would understand to be confidential or proprietary, or that has or could have commercial value or other utility in the Company's Business, or the unauthorized disclosure of which could be detrimental to the Company's interests, including but not limited to all information concerning Company's or its affiliates' operations, concepts, prospects, customers, employees, agents, account executives, recruiters, earnings, products, services, equipment, systems and/or prospective and executed and other business arrangements.  For avoidance of doubt, Confidential Information includes, without limitation, the names and contact information of any person or entity with whom or about whom Employee learned as a result of Employee's employment with Company. Confidential Information does not include information that can be shown by documented evidence has become widely known to the public other than through the improper disclosure of such information.



(e)     "**Confidential Records**" means all documents and other records, in whatever form, that contain or reflect any Confidential Information.

(f)     "**Material Contact**" means contact between Employee and any Company customer or potential customer within twenty-four (24) months prior to Employee's termination or resignation in which Employee either (i) communicated directly with such customer or potential customer on behalf of the Company; or (ii) obtained Confidential Information about such customer or potential customer in the ordinary course of business as a result of Employee's association with the Company; or (iii) received compensation, commissions, or earnings based on customer's receipt of products or services from the Company.

(g)     "**Restricted Territory**" means a fifty (50) mile radius around any office of the Company, including Employee's office in their personal residence, if applicable, as to which, during the last twenty-four (24) months of their employment with the Company: (i) Employee was assigned, or (ii) Employee had supervisory, managerial or administrative responsibilities.

(h)     "**Trade Secrets**" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar state law.

### 1.2  Non-Disclosure of Confidential Information

(a)     Except in connection with and in furtherance of Employee's work on Company's behalf, Employee shall not at any time, directly or indirectly: (i) use any Confidential Information for any purpose; or (ii) disclose or otherwise communicate any Confidential Information to any person or entity.

(b)     Employee acknowledges that during Employee's employment with Company, Employee will have access to Confidential Information, all of which shall be made accessible to Employee only in strict confidence; that unauthorized disclosure of Confidential Information will damage Company's business; that Confidential Information would be susceptible to immediate competitive application by a competitor of Company; that Company's business is substantially dependent on access to and the continuing secrecy of Confidential Information; that Confidential Information is novel, unique to Company and known only to Employee, Company and certain key employees and contractors of Company; that Company shall at all times retain ownership and control of all Confidential Information; and that the restrictions contained in this Agreement (including Section 2 below) are reasonable and necessary for the protection of Company's legitimate business interests. Employee further acknowledges that protecting and safeguarding Confidential Information is essential to the Company's Business and agrees to comply with all policies and procedures of the Company for protecting Confidential Information.

(c)     All Confidential Records are and shall remain Company's property. Employee shall not, at any time, directly or indirectly: (i) copy or use any Confidential Record for any purpose not relating directly to Employee's work on Company's behalf; (ii) show, give, sell, disclose or otherwise

DocuSign Envelope ID: E8736B21-5341-4D07-941D-5326EC3B1200



communicate any Confidential Record or the contents of any Confidential Record to any person or entity other than Company or authorized persons or entities; or (iii) email Confidential Records to a personal email account. Upon the termination of Employee's employment with Company with or without cause, or upon Company's request, Employee shall immediately deliver to Company or its designee (and shall not keep in Employee's possession or deliver to any other person or entity) all Confidential Records and all other documents and property related to the Company's business in Employee's possession or control (including electronic copies saved to a portable device or web or cloud-based storage, or emailed to a personal email account). Employee understands and agrees that compliance with this paragraph may require that data be removed from Employee's personal computer equipment or electronic devices. Consequently, upon reasonable prior notice, Employee agrees to permit the qualified personnel of Company and/or its contractors access to such computer equipment or electronic devices for that specific purpose. This Agreement shall not prohibit Employee from complying with any subpoena or court order, provided that (and subject to Section 1.3 below) Employee shall at the earliest practicable date provide a copy of the subpoena or court order to Company's General Counsel, it being the parties' intention to give Company a fair opportunity to take appropriate steps to prevent the unnecessary and/or improper use or disclosure of Confidential Information and Confidential Records, as determined by Company in its sole discretion.

(d)     Employee acknowledges that Company has received, and in the future will receive, from third parties confidential or proprietary information, and that Company must maintain the confidentiality of such information and use it only for authorized purposes. Employee shall not use or disclose any such information except as authorized by Company or the third party to whom the information belongs.

(e)     With respect to Trade Secrets, Employee's confidentiality obligations shall continue indefinitely until the information is no longer considered a Trade Secret under applicable law. With respect to Confidential Information which is not a Trade Secret, Employee's obligations shall continue in duration until the first to occur of the following: (a) five (5) years has elapsed since termination of Employee's employment with Company for any reason, or (b) the Confidential Information has been made generally available to the public either by Company or by a third party with Company's consent and through no wrongful action by Employee.

### 1.3  Defend Trade Secrets Act Notice

Nothing in this Agreement prohibits Employee from reporting an event that Employee reasonably and in good faith believe is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission, Equal Employment Opportunity Commission, or Department of Labor), requires notice to or approval from the Company before doing so, or from cooperating in an investigation conducted by such a government agency. Employee acknowledges notice that under the Defend Trade Secrets Act, no individual shall be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret if: (i) the disclosure of the trade secret is made in confidence to a government official, either directly or indirectly, or to an attorney, for the sole purpose of reporting or investigating a suspected violation of law; (ii) the disclosure of the trade secret



is made in a complaint or other document filed in a lawsuit, if such filing is made under seal; or (iii) if an individual files a lawsuit alleging retaliation by an employer for reporting a suspected violation of law, if the disclosure of the trade secret is made to the attorney of the individual or used in the court proceeding so long as the filing of any document containing the trade secret is under seal and the trade secret is not disclosed except under court order.

2. **Employee Responsibilities and Restrictive Covenants**

Employee acknowledges that Employee has or will receive from the Company, its parent, or its subsidiaries and affiliates, valuable information, instruction and training, and that Employee's services to be rendered are of a special character which have unique value to the Company, the loss of which will not be readily calculable. Given this unique value, the training the Company has provided and will continue to provide to Employee, the expenditure of money and effort to be incurred by the Company in connection with the employment of Employee, and in light of the Confidential Information to be obtained by or disclosed to Employee, and as a material inducement to the Company to employ or continue to employ Employee, Employee covenants and agrees to the following:

2.1 During the term of Employee's employment with the Company, Employee will devote Employee's best efforts and entire business time and attention to the Company's business, and Employee will not, directly or indirectly, operate, engage in, assist, be employed by, or have any interest in any business activity of or for the benefit of any person or entity other than the Company, or have any ownership interest in any business that does business with the Company, or whose ownership would otherwise create a conflict of interest, except as otherwise approved in writing by the Company, which approval the Company may in its absolute discretion withhold.

2.2 During the term of Employee's employment with the Company, and for a period of twelve months after the termination of Employee's employment for any reason, Employee will not, directly or indirectly, do any of the following:

(a)    (i) work in a Competing Position for a Competing Business within the Restricted Territory; or (ii) own, maintain, operate or have any ownership interest in a Competing Business within the Restricted Territory;

(b)    (i) solicit, seek to employ, or seek to retain the services of any person whose identity Employee learned while employed by the Company, who is at that time or was within the previous twelve (12) months providing services to the Company as an employee or independent contractor, for the purpose of providing services to a Competing Business; or (ii) solicit or seek to place any temporary employee, candidate for employment, or independent contractor candidate, who, in the twelve (12) months prior to Employee's separation of employment with Company, was directly or indirectly placed by Employee or sought to be placed by Employee or whose identity Employee learned in carrying out Employee's job duties, which placement is for or on behalf of any Competing Business; or (iii) persuade, induce or attempt to persuade or induce any such person

- 5 -



referenced in this subsection 2.2(b) to leave his or her employment or temporary employment or to refrain from providing services to the Company; or

(c) (i) solicit or seek to provide services to any customer or potential customer of the Company with whom Employee had Material Contact, which solicitation is for or on behalf of any Competing Business; or (ii) persuade, induce or attempt to persuade or induce any such customer or potential customer to alter or reduce its use of services from the Company.

2.3 For a period of twelve (12) months after the termination of Employee's employment, Employee will promptly inform Employer in writing of any employment, consulting engagements, contract work or other business affiliations that Employee has with any Competing Business or with a Company Customer. Such information will include, but not be limited to: (a) the name and address of the business or business entity with which Employee has such a relationship; and (b) the general nature of Employee's business-related activities. To the extent requested by Employer, Employee agrees to provide such additional information as Employer reasonably believes to be necessary for Employer to ascertain whether Employee is complying with this Agreement. For purposes of this paragraph, a written letter or email to Company's Legal and/or Human Resources Department shall serve as proper notice.

2.4 In the event Employee breaches any provision of this Section 2 during the twelve (12) month period following the termination of Employee's employment, this Agreement shall be extended automatically as follows: the duration of such extension shall equal the period of time between the date Employee began such violation and the date Employee permanently ceases such violation up to the maximum extension period allowed by applicable law. An alleged breach of any other provision of this Agreement asserted by Employee shall not be a defense to claims arising from the Company's enforcement of this Section.

2.5 Nothing in this Agreement prohibits Employee from owning up to five percent (5%) of any class of equity or debt securities that are traded on a national securities exchange.

3. **Assignment of Work Product and Inventions**

Employee hereby assigns and grants to the Company (and will upon request take any actions needed to formally assign and grant to the Company and/or obtain patents, trademark registrations or copyrights belonging to the Company) the sole and exclusive ownership of any and all discoveries, inventions, information, reports, processes, designs, plans, computer software or programs, writings, technical information or any other type of work product collected or developed by Employee, alone or with others, during the term of Employee's employment. This duty applies whether or not the foregoing inventions or information are made or prepared in the course of employment with the Company, its parent, or its subsidiaries or affiliates, so long as such inventions or information relate to the Company Business and have been developed in whole or in part during the term of Employee's employment. Employee agrees to advise the Company in writing of each invention that Employee, alone or with others, makes or conceives during the term of Employee's employment.



4. **Company Access**

Employee agrees and consents that, during the term of Employee's employment with the Company and thereafter, the Company may review, audit, intercept, access and disclose all messages created, received or sent over the voice mail, electronic mail and Internet access systems provided by the Company, with or without notice to Employee, and that such review, audit, interception, access, or disclosure may occur during or after work hours.  Employee further consents and agrees that the Company may, at any time, access and review the contents of all telephones and related systems, computers, flash drives, other data storage equipment and devices, files, desks, drawers, closets, cabinets and work stations which are either on Company's premises or which are owned or provided by Company.  Employee further allows Company to use, without the necessity of securing additional permission or providing additional consideration, Employee's likeness for use in marketing materials, print materials, advertising and promotional materials and/or online advertising.

5. **Employee Representations**

   5.1  Employee represents and warrants that: (a) this Agreement and Employee's assumption and performance of job duties for the Company do not conflict with and will not be constrained by or violate any prior business or employment relationship, contract, or any decree or order of any court or other governmental authority by which Employee is bound, other than those agreements, if any, expressly listed in Attachment A; and (b) Employee will not at any time while an employee of Company, use, rely upon or otherwise refer to confidential information, trade secrets or other proprietary information belonging to another or arising out of any prior business or employment relationship or contract.  Employee further agrees that Employee will not disclose any such trade secrets or other proprietary information to the Company or others.  Employee agrees to hold the Company harmless from any and all claims arising out of any agreements containing restrictive covenants limiting or potentially limiting Employee's ability to work for the Company other than those agreements, if any, expressly listed in Attachment A.  Employee agrees to reimburse the Company for any and all losses, damages, claims, expenses and costs arising out of or relating to the defense by the Company of any such suit commenced against the Company, including attorneys' fees incurred by the Company in connection with defending such a suit.  The Company shall be under no obligation to assist Employee in any such contract dispute with a prior employer, and in the event that Employee is enjoined or prohibited from working for the Company, the Company shall have no obligations to Employee.

   5.2  Employee represents and warrants that if Employee's employment with the Company were to terminate, Employee could earn a living while fully complying with all the terms of this Agreement and that the restrictions contained in this Agreement are reasonable and necessary to protect the Company's legitimate interests in its Confidential Information, goodwill and customer relationships.

Form Agreement– Multi-State                                                                                                   April 2019



6. **Interpretations of Agreement**

   6.1   Wherever this Agreement contemplates that Employee will have an obligation or restriction at or after the term of Employee's employment with the Company, Employee agrees that such obligation or restriction will exist without regard for which party to the Agreement terminates the employment relationship, and without regard for the reason (or lack thereof) for the termination of the employment relationship, to the extent permitted by law.

   6.2   Employer and Employee agree that this Agreement constitutes the entire and final agreement of Employee and the Company with respect to the subject matter of this Agreement, and supersedes all prior and contemporaneous agreements or understandings, express or implied, written or oral, between the Company and Employee with respect to the subject matter hereof. Any subsequent change or changes to Employee's duties, salary, or compensation will not affect the validity or scope of this Agreement.

   6.3   Employer and Employee agree that if any provision of this Agreement, or part or application thereof, will for any reason and to any extent be invalid, unreasonable, or unenforceable, such provision will be deemed severable and the remainder of this Agreement will remain valid and fully enforceable.  Employer and Employee further consent and agree to an arbitrator or court of competent jurisdiction modifying or reforming any restriction herein found to be invalid, unreasonable, or unenforceable so as to make it enforceable to the maximum extent permissible under the law to protect Company's legitimate business interests.

   6.4   The headings in this Agreement are included solely for convenience and will be given no effect in the construction of this Agreement.

   6.5   The parties agree that this Agreement accurately reflects both parties' intent and understanding and should not be presumptively construed against either party in the event that there is any dispute over the meaning or intent of any provision.

7. **Enforcement of Agreement**

   7.1   If requested by the Company, Employee agrees, at any time during the term of Employee's employment and thereafter, to reaffirm in writing the obligations imposed by, and Employee's past compliance with, any or all of the provisions of this Agreement.

   7.2   Employee acknowledges and agrees that the covenants contained in this Agreement are necessary to protect the proprietary and related interests of the Company, and that the limitations contained herein are reasonable with respect to duration, geographical area and scope of activities, and do not impose a greater restraint than is necessary to protect the Confidential Information, goodwill, and other business interests of the Company.  Employee acknowledges and agrees that any breach of this Agreement will cause irreparable harm to the Company, for which a remedy in the form of damages will not be adequate or otherwise ascertainable.  Employee

DocuSign Envelope ID: E8736B01-5341-AD97-941D-5326EC3B1200



therefore agrees that the Company will be entitled to temporary, preliminary and permanent injunctive relief against Employee, without having to post bond. This section will not limit any other legal or equitable remedies that the Company may have against Employee for violations of these restrictions.

7.3 Employer and Employee agree that this Agreement will be governed by the laws of the state shown in the Company records as the Employee's current primary office location, without giving effect to the state's conflict of law rules. Employee further agrees that any litigation related to this Agreement shall be brought exclusively in the state or federal courts of such state and that those courts are convenient forums. Employee hereby submits to the personal jurisdiction of those courts for purposes of litigation, and waives any claims against or objections to such personal jurisdiction. If Employee resides in California and is subject to California law, then the following applies to Employee for so long as Employee is subject to California law: (a) Section 2.2(a) shall not apply; and (b) Sections 2.2(b) and 2.2(c) shall be limited to situations where Employee is aided in his or her conduct by the use or disclosure of the Company's Trade Secrets.

7.4 If Company brings any action or proceeding to enforce any rights or obligations hereunder and is successful in whole or in part in such action or proceeding, it shall be entitled to reimbursement by Employee for all costs, expenses, and reasonable attorneys' fees incurred by the Company with respect to such action or proceeding. Such reimbursement shall be payable upon demand.

8. **General**

8.1 Employer and Employee agree that this Agreement will be binding upon and inure to the benefit of the Company, its successors and assigns, without the need for further agreement or consent by Employee.

8.2 Employer and Employee agree that any term or provision of this Agreement may be amended or waived only by a written amendment or similar document signed by Employee and an officer of Employer. The failure of either party to enforce any of the provisions in this Agreement will not be construed to be a waiver of the right of that party to enforce any such provision thereafter.

8.3 Employee hereby acknowledges that Employee has received good, valuable, and sufficient consideration for Employee's obligations hereunder, including, without limitation, the Company's agreement to extend an offer of at-will employment to Employee and/or to continue Employee's at-will employment, as applicable, and by Company's disclosure of such Confidential Information to Employee as is necessary for the performance of Employee's duties. Employee's employment can be terminated with or without cause by Employee or the Company at any time. Nothing contained in this Agreement will limit or otherwise alter the foregoing.

8.4 Employee agrees that this Agreement is not confidential, and that the Company may, during the term of Employee's employment with the Company and thereafter, provide copies of this



Agreement to others, including persons or entities that may employ, do business with, or consider employing or doing business with Employee in the future.

8.5 By Employee's signature below, Employee acknowledges that Employee (a) has had sufficient opportunity to read each provision of this Agreement and understands each provision, (b) has had an opportunity to review the Agreement with legal counsel of Employee's choice, (c) is not under duress, and (d) is not relying on any representations or promises that are not set forth in the Agreement.

| EMPLOYEE: | CYBERCODERS, INC. |
|---|---|
| Signature: *Charles Cooke* (DocuSigned by: EC5B260A41054B8...) | Signature: *[signature]* |
| Name (Print): Charles Cooke | Name: Shane Lamb |
| Title: VP, Recruiting | Title: President |
| Date: 7/6/2019 | Date: 7/6/2019 |

- 10 -



## ATTACHMENT A

I hereby affirm that I am not a party to any agreement, the terms of which would restrict or otherwise prohibit my ability to fully perform the duties of which I am asked by CyberCoders. Further, I affirm that I have provided CyberCoders with copies of all documents to which I have been bound with prior employer(s) over the prior twenty-four (24) months. The following is a complete list of all agreements containing restrictive covenants, including without limitation, non-compete provisions, non-solicit provisions and other terms which limit or potentially limit Employee's ability to work for the Company.

[x]  None.

[ ]  List of agreements:

_____

_____

_____

[ ]  Additional sheets are attached.

EMPLOYEE:

Signature:  *Charles Cooke* (DocuSigned by: EC5B260A41054B8...)

Name:  Charles Cooke
         (Print)

- 11 -